1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                         NORTHERN DISTRICT OF CALIFORNIA

10                                San Francisco Division

11   DAVID RIDENOUR,

                                                    Case No. 3:15-cv-03051-LB
12              Plaintiff,

                                                    **ORDER DENYING CIGNA'S MOTION**
13       v.                                         **TO TRANSFER**

14   CIGNA HEALTH AND LIFE INSURANCE                [Re: ECF No. 13]
     COMPANY,
15
                Defendant.
16

17                                   INTRODUCTION

18         The plaintiff David Ridenour sued Cigna Health and Life Insurance Company after it denied

19   his son benefits for rehabilitative therapy under a welfare benefit plan regulated by the Employee

20   Retirement Income Security Act of 1974 ("ERISA"). (Complaint, ECF No. 1.[1]) Cigna moves

21   under 28 U.S.C. § 1404(a) to transfer this action to the Eastern District of Virginia for the

22   convenience of the parties and witnesses and in the interest of justice. (Motion, ECF No. 13.) The

23   issue is a close one: the plaintiff is in the Eastern District of Virginia and – to the extent that

24   witnesses are relevant to a court's review of a benefits decision under ERISA – witnesses are there

25   and in California fairly equally. Still, given the deference given to the plaintiff's choice of forum

26   and a local interest in adjudicating the controversy, the court finds that Cigna did not meet its

27

28   [1] Citations are to the Electronic Case File ("ECF"); pin cites are to the ECF-generated page
     numbers at the tops of documents.

     ORDER (No. 3:15-cv-03051-LB)

United States District Court
Northern District of California

burden to show that transfer is appropriate. The court thus denies the motion.

**STATEMENT**

**1. Mr. Ridenour's Allegations**

The plaintiff David Ridenour is, and was at all times relevant to this action, a resident of the State of Virginia. (Complaint, ECF No. 1, ¶ 2.) He is a participant in the Orrick, Herrington & Sutcliffe LLP Welfare Benefit Plan, which is an employee welfare benefit plan regulated by ERISA. (*Id.* ¶ 3.) Orrick has its principal place of business in San Francisco, California. (*Id.* ¶ 4.) Cigna, which insures and administers the plan, is a corporation with its principal place of business in the State of Connecticut, is authorized to transact and is transacting business in the Northern District of California, and can be found in the Northern District of California. (*Id.* ¶ 5.)

Mr. Ridenour has a six-year-old son, B.R., who is, and was at all times relevant to this action, a covered dependent under the Plan and entitled to health care benefits. (*Id.* ¶ 3.) When B.R. was seven-months old, he suffered a severe traumatic brain injury, namely bilateral occipital and suboccipital skull fractures, scalp hematoma, and a cortical irregularity of the spinous process of the C3 vertebral body. (*Id.* ¶ 8.) His injury was multifocal and has resulted in global impairments. (*Id.* ¶ 9.) These significant deficits continue to manifest and affect his physical and cognitive abilities and his ability to perform activities of daily living. (*Id.* ¶ 9.)

By 2010, B.R.'s global impairments included a lack of any expressive language. (*Id.* ¶ 10.) Therefore, under recommendation by his pediatrician, Dr. Samuel Weinstein, B.R. began rehabilitative services, including occupational and speech therapy. (*Id.* ¶ 10.) Cigna denied benefits for speech therapy as not medically necessary for dates of service November 4, 2010 through December 14, 2010 and forward. (*Id.* ¶ 11.) Mr. Ridenour appealed Cigna's denial twice and submitted supporting letters from Dr. Weinstein and B.R.'s pediatric speech language pathologist. (*Id.* ¶ 12.) Those letters stated that B.R. suffered from a significant speech and motor planning disorder and a language disorder that affected his ability to express basic needs. (*Id.* ¶ 12.) On March 31, 2011, Cigna denied Mr. Ridenour's second appeal on the ground that the speech and language therapy was not medically necessary. (*Id.* ¶ 13.)

On July 21, 2011, Mr. Ridenour submitted an independent medical review ("IMR") request to

United States District Court
Northern District of California

the California Department of Insurance ("DOI"). (*Id.* ¶ 14.) Thereafter, an IMR was conducted by a physician who is board-certified in pediatrics, neurology, and psychiatry and who has a special competence in child neurology and a sub-specialty certification in clinical neurophysiology. (*Id.* ¶ 16.) On October 17, 2011, the IMR physician determined that speech therapy was medically necessary for B.R. and that Cigna's denial should be overturned for all prior and prospective dates of service. (*Id.* ¶ 15.)

Following the October 17, 2011 IMR decision and for the next two years, Cigna delayed reimbursement by months on nearly all of Mr. Ridenour's claims for B.R.'s treatment. (*Id.* ¶ 17.) Cigna also underpaid the claims, which prompted the DOI to conduct a regulatory review. (*Id.* ¶ 17.) Finally, beginning in December 2013, Cigna stopped processing all claims for B.R.'s treatment. (*Id.* ¶ 18.)

In a January 14, 2014 letter, Cigna informed Mr. Ridenour that it was performing a random audit of his claim for treatment by B.R.'s occupational therapist for dates of service from December 2, 2013 to January 9, 2014. (*Id.* ¶ 18.) Cigna requested information showing proof of payment (which included "copies of [Mr. Ridenour's] actual Visa credit card statements as opposed to receipts"), Dr. Weinstein's order for B.R.'s treatment, B.R.'s treatment plan, and daily treatment notes. (*Id.* ¶¶ 18, 20.) Mr. Ridenour submitted the requested information to Cigna, and on January 29, 2014 Cigna informed him that it had received all of the information it requested for its audit. (*Id.* ¶¶ 19, 21, 22.)

Nonetheless, Cigna failed to respond to multiple inquiries from Mr. Ridenour regarding the failure to process and pay claims for B.R.'s treatment. (*Id.* ¶ 23.) Thus, on February 12, 2014 Mr. Ridenour submitted a complaint to the DOI regarding Cigna's failure to pay claims. (*Id.* ¶ 24.) On March 17, 2014, Cigna wrote to the DOI and Mr. Ridenour and stated that it denied all claims for B.R.'s occupational therapy on the ground that the treatment was not medically necessary. (*Id.* ¶ 25.)

Pursuant to a request from the DOI, on March 27, 2014, Cigna agreed to reprocess and pay claims submitted prior to March 18, 2014. (*Id.* ¶ 26.) The DOI and Cigna agreed that Mr. Ridenour's appeal requirement in the Plan was waived and that Mr. Ridenour could immediately

ORDER (No. 3:15-cv-03051-LB)

submit an IMR to the DOI regarding Cigna's denial of prior and prospective claims for B.R.'s rehabilitative therapies. (*Id.* ¶ 26.)

Mr. Ridenour then submitted an IMR request to the DOI on April 16, 2014. (*Id.* ¶ 27.) The IMR request included (1) Dr. Weinstein's most recent prescription for B.R. to receive rehabilitative therapy for up to 35 hours per week, (2) an individualized treatment plan, (3) letters of medical necessity, (4) evaluations, and (5) medical records. (*Id.* ¶ 27.) An IMR was conducted by a physician who is board certified in pediatrics and has a sub-specialty certification in developmental-behavioral pediatrics. (*Id.* ¶ 29.) On April 29, 2014, the IMR physician agreed with Dr. Weinstein and determined that the treatments "were and are medically necessary for this patient" and that Cigna's denial should be overturned for all prior and prospective dates of service. (*Id.* ¶ 28.)

Following the second IMR decision, Cigna delayed processing all claims and reimbursement for months, prompting the DOI to track Cigna's claims payments and conduct a separate regulatory review. (*Id.* ¶ 30.) On July 23, 2014, Cigna wrote that it would not cover claims for more than 30 hours of therapy per week on the assertion that Dr. Weinstein prescribed only 20-30 hours of therapy per week. (*Id.* ¶ 31.) (In fact, Dr. Weinstein prescribed up to 35 hours of therapy per week. (*Id.* ¶ 31.)) Cigna also requested that going forward Mr. Ridenour submit "daily treatment records for each date of service submitted" with each claim. (*Id.* ¶ 31.) On August 6, 2014, however, the DOI informed Mr. Ridenour that Cigna agreed to process claims for 35 hours per week of rehabilitative therapy. (*Id.* ¶ 32.) Still, on August 8, 2014, Cigna wrote that it reserved the right to re-review the number of hours submitted for future claims based on the request for clinical notes. (*Id.* ¶ 33.)

In an August 26, 2014 letter, Cigna wrote to Mr. Ridenour and stated that it was not "our intent to override any information provided by [B.R.'s] health care professionals or the Independent Medical Review Board." (*Id.* ¶ 34.) Yet Cigna admitted that it sought clinical notes to "determine if services are still needed and if they are effective." (*Id.* ¶ 34.)

Even though Mr. Ridenour submitted the requested daily treatment notes, Cigna continued to delay processing and reimbursement of all claims for months. (*Id.* ¶ 35.) On October 23, 2014,

United States District Court
Northern District of California

United States District Court
Northern District of California

Cigna wrote to Dr. Weinstein and questioned his recommendations regarding the type, length, and quantity of B.R.'s treatment, and Cigna stated it could terminate his clinic's participation agreement with Cigna if he failed to respond promptly. (*Id.* ¶ 36.) On November 10, 2014, Dr. Weinstein wrote to Cigna and confirmed his prescription of 35 hours per week of rehabilitative therapy for B.R. (*Id.* ¶ 37.)

That same month, Dr. Weinstein and Cigna's Dr. Frank L. Brown spoke by telephone to discuss B.R.'s treatment, and Dr. Weinstein explained his treatment recommendations. (*Id.* ¶ 38.) On November 25, 2014, Cigna's Dr. Brown wrote to Dr. Weinstein with additional, lengthy questions about Dr. Weinstein's medical recommendations for B.R.'s treatment. (*Id.* ¶ 39.)

On November 26, 2014, Dr. Daniel Nicoll, Cigna's National Medical Director for Fraud and Abuse, wrote to the DOI and explained the delay in processing claims for B.R. (*Id.* ¶ 40.) Dr. Nicoll is not a pediatrician and has not been in private practice since 1992; still, he wrote that in his opinion, B.R.'s treatment was medically unnecessary and he "'felt it was necessary'" to seek an opinion from MES, a third-party review company paid by Cigna. (*Id.*) Dr. Nicoll enclosed a September 2014 MES report, which said that B.R.'s treatment was not medically necessary. (*Id.*)

On December 16, 2014 and January 6, 2015, Mr. Ridenour submitted requests for the Cigna claim file, claims manual and policies, Summary Plan Descriptions, and administrative services agreements between Cigna and the Plan. (*Id.* ¶ 41.) Cigna did not respond. (*Id.*)

## 2.   Procedural History

Following the denial of the claims for benefits under the Plan, Mr. Ridenour alleges that he exhausted all administrative remedies required under ERISA and performed all duties and obligations on his part. (*Id.* ¶ 45.) He then filed the instant complaint against Cigna in this court on July 1, 2015. (*See generally id.*)

Mr. Ridenour brings two claims under ERISA. (*Id.* ¶¶ 7-50.) The first claim is for Cigna's denial of benefits. (*Id.* ¶¶ 7-48.) He alleges that Cigna wrongfully denied his claims by: (1) failing to pay medical benefit payments due to him at a time when Cigna knew, or should have known, that B.R. was entitled to those benefits under the terms of the Plan; (2) failing to provide prompt and reasonable explanations of the bases relied on under the terms of the Plan documents, in

ORDER (No. 3:15-cv-03051-LB)

5

relation to the applicable facts and Plan provisions, for the denial of the claims for medical benefits; (3) after the claims were denied in whole or in part, failing to adequately describe to him any additional material or information necessary to perfect the claims along with an explanation of why such material is or was necessary; (4) failing to pay for the treatment which Cigna determined was medically necessary; (5) failing to pay for the treatment which was determined medically necessary by two IMR decisions; and (6) failing to properly and adequately investigate the merits of the claims. (*Id.* ¶ 43.) As a proximate result of the denial of medical benefits, Mr. Ridenour has incurred damages in the amount of unpaid benefits for B.R.'s treatment exceeding $335,000.00. (*Id.* ¶ 42.) He also alleges that he has incurred attorney's fees and costs. (*Id.* ¶ 47.)

The second claim is for equitable relief. (*Id.* ¶¶ 49-50.) Pursuant to 29 U.S.C. § 1132(a)(1)(B), Mr. Ridenour seeks: (1) restitution of all past benefits due to him for B.R.'s treatment, plus pre-judgment and post-judgment interest at the lawful rate; (2) a mandatory injunction requiring Cigna to immediately qualify B.R. for medical benefits due and owing under the Plan, and; (3) such other and further relief as the court deems necessary and proper to protect the interests of B.R. under the Plan. (*Id.* ¶ 50.)

On August 18, 2015, Cigna filed a motion under 28 U.S.C. § 1404(a) to transfer this action to the United States District Court for the Eastern District of Virginia. (Motion, ECF No. 13.) Mr. Ridenour filed an opposition on September 1, 2015. (Opposition, ECF No. 19.) On September 14, 2015, the day before its reply was due, Cigna filed an action against Mr. Ridenour, his wife Laura Ridenour, B.R.'s occupational therapist Beatrice Bruno, and Ms. Bruno's company, Big Island, Little Hands LLC, in the Eastern District of Virginia. (*See* Reply, Ex. 2, ECF No. 29-2 (Virginia Action Complaint).) It brings the following claims against them: (1) fraud; (2) aiding and abetting fraud; (3) negligent misrepresentation; (4) unjust enrichment; (5) civil conspiracy; (6) violation of ERISA, 29 U.S.C. § 1132(a)(2); (7) violation of ERISA, 29 U.S.C. § 1132(a)(3); and (8) declaratory relief. (*Id.* ¶¶ 78-122.) The claims are based on the circumstances surrounding Mr. Ridenour's submission of claims for B.R.'s treatment. (*See id.* ¶¶ 15-77.) On September 15, 2015 Cigna filed its reply in support of its motion to transfer this action. (Reply, ECF No. 29.) On October 12, 2015, with the court's permission, Mr. Ridenour filed a sur-reply. (Sur-Reply, ECF

ORDER (No. 3:15-cv-03051-LB)

6

1  No. 39.) The court held a hearing on the matter on October 29, 2015. (Minute Order, ECF No.41.)

2                                      **GOVERNING LAW**

3       "For the convenience of parties and witnesses, in the interest of justice, a district court may

4  transfer any civil action to any other district or division where it might have been brought or to

5  any district or division to which all parties have consented." 28 U.S.C. § 1404(a). The statute is

6  intended "to prevent the waste of time, energy, and money and to protect litigants, witnesses and

7  the public against unnecessary inconvenience and expense." *Van Dusen v. Barrack*, 376 U.S. 612,

8  616 (1964) (internal quotation marks and ellipses omitted). A transfer pursuant to section 1404(a)

9  is available "upon a lesser showing of inconvenience" than that required for a dismissal on the

10  ground of forum non conveniens. *Norwood v. Kirkpatrick*, 349 U.S. 29, 32 (1955). Section

11  1404(a) provides for transfer to a more convenient forum, "not to a forum likely to prove equally

12  convenient or inconvenient," *Van Dusen*, 376 U.S. at 646, and transfer should not be granted if the

13  effect is simply to shift the inconvenience to the plaintiff, *Decker Coal Co. v. Commonwealth*

14  *Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986). The district court has broad discretion "to

15  adjudicate motions for transfer according to an 'individualized, case-by-case consideration of

16  convenience and fairness.'" *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir. 2000)

17  (quoting *Stewart Org. v. Ricoh Corp.*, 487 U.S. 22, 30 (1988)); *see also Westinghouse Elec. Corp.*

18  *v. Weigel*, 426 F.2d 1356, 1358 (9th Cir. 1970).

19       If the action could have been brought in the transferee venue, the court then must determine if

20  the defendant has made a "strong showing of inconvenience to warrant upsetting the plaintiff's

21  choice of forum" by considering private factors relating to "the convenience of the parties and

22  witnesses" and public factors relating to "the interest of justice," including "the administrative

23  difficulties flowing from court congestion and [the] local interest in having localized controversies

24  decided at home." *Decker Coal*, 805 F.2d at 843 (internal quotation marks omitted); *see*

25  *Commodity Futures Trading Comm'n v. Savage*, 611 F.2d 270, 279 (9th Cir. 1979) (burden on

26  moving party to show transfer is appropriate); *David v. Alphin*, No. C 06-04763 WHA, 2007 WL

27  39400, at *3 (N.D. Cal. Jan. 4, 2007) (private-convenience factors include the plaintiff's choice of

28  forum, relative convenience to parties, relative convenience to witnesses, and ease of access to

United States District Court
Northern District of California

ORDER (No. 3:15-cv-03051-LB)

7

1    sources of proof; public-interest factors include relative degrees of court congestion, local interest

2    in deciding local controversies, potential conflicts of law, and burdening citizens of an unrelated

3    forum with jury duty) (citing *Decker Coal*, 805 F.3d at 843). The Ninth Circuit has identified

4    factors that a court may consider in determining whether transfer is appropriate in a particular

5    case:

6        For example, the court may consider: (1) the location where the relevant agreements
         were negotiated and executed, (2) the state that is most familiar with the governing law,
7        (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5)
         the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the
8        differences in the costs of litigation in the two forums, (7) the availability of compulsory
         process to compel attendance of unwilling non-party witnesses, and (8) the ease of
9        access to sources of proof.

10   *Jones*, 211 F.3d at 498-99.

11                                              **ANALYSIS**

12   **1.   The Action Could Have Been Brought in the Eastern District of Virginia**

13        ERISA's venue provisions permit a plaintiff to bring a federal action where: "(1) a plan is

14   administered, or (2) a breach took place, or (3) a defendant resides or (4) a defendant may be

15   found." *Varsic v. U.S. Dist. Ct. for the Cent. Dist. of Cal.*, 607 F.2d 245, 248 (9th Cir. 1979)

16   (citing 29 U.S.C. § 1132(e)(2)). Through these provisions, "Congress intended to give ERISA

17   plaintiffs an expansive range of venue locations." *Bohara v. Backus Hosp. Med. Benefit Plan*, 390

18   F. Supp. 2d 957, 960 (C.D. Cal. 2005) (citing *Varsic*, 607 F.2d at 248).

19        Venue is proper in the Eastern District of Virginia. The breach took place there because it is

20   where benefits were to be paid. *See Teets v. Great-West Life & Annuity Ins. Co.*, No. 2:14-cv-1360

21   KJM DAD, 2014 WL 4187306, at *2 (E.D. Cal. Aug. 21, 2014) ("Courts liberally construe

22   [ERISA's venue provision] to find that a breach occurs where the plan participant expects to

23   receive benefits."). Cigna transacts business there and thus can be "found" there. *See Varsic*, 607

24   F.2d at 248 (a defendant is "found" in any district where personal jurisdiction can be asserted, i.e.,

25   where defendant's activities are "substantial" or "continuous and systematic"); *Frias v. Aetna Life*

26   *Ins. Co.*, No. 14-cv-03146-TEH, 2014 WL 5364105, at *2 (N.D. Cal. Oct. 21, 2014) ("Regarding

27   Aetna, Plaintiff does not dispute that the insurance company regularly conducts business

28   nationwide, including in Arizona, and can therefore be 'found' in the District of Arizona."). Mr.

ORDER (No. 3:15-cv-03051-LB)

8

United States District Court
Northern District of California

Ridenour concedes that he could have filed this action in the Eastern District of Virginia.

**2.  The Plaintiff's Choice of Forum and the Convenience of the Parties**

The two parties here are Mr. Ridenour, who resides in Virginia, and Cigna, which has its principal place of business in Connecticut. Cigna argues that the Northern District of California is inconvenient because it is far from Connecticut, and the Eastern District of Virginia is more convenient because it is closer. (Motion, ECF No. 13 at 12.) Mr. Ridenour essentially stands on his choice of forum, asserting that he "finds the Northern District of California more convenient because he chose to file his case here." (Opposition, ECF No. 19 at 11.)

A plaintiff's choice of forum, while not dispositive, should be given weight when deciding a motion to change venue; it generally is given great deference in ERISA cases. *See Jacobsen v. Hughes Aircraft Co.*, 105 F.3d 1288, 1302 (9th Cir. 1997), *amended on denial of reh'g*, 128 F.3d 1305 (9th Cir. 1997), *rev'd on other grounds*, 525 U.S. 432 (1999). Despite this, the deference in an ERISA case varies based on the case; for example, a pension plan's collection suit in its home state is accorded great deference, but less deference might be given a class action or derivative lawsuit. *See California Serv. Employees Health & Welfare Trust Fund v. Command Security Corp.*, No. C-12-1079 EMC, 2012 WL 2838863, at *4 (N.D. Cal. July 10, 2012); *David*, 2007 WL 39400, at *3; *see also Lou v. Belzberg*, 834 F.2d 730, 739 (9th Cir. 1987) (though great weight is generally accorded plaintiff's choice of forum, when an individual brings a derivative suit or represents a class, the named plaintiff's choice of forum is given less weight.") (internal citation omitted). Similarly, if a plaintiff resides outside the forum, and the operative facts take place outside of the forum, courts transfer venue even in ERISA cases when other factors favor transfer. *See Frias,* 2014 WL 5364105, at *3 (*citing Jacobson*, 105 F.3d at 1302) (other quotations and citations omitted); *M.K. v. Visa Cigna Network POS Plan*, No. 12-CV-04652-LHK, 2013 WL 2146609, at *4 (N.D. Cal. May 15, 2013); *see also AV Media, Pte, Ltd. v. Omnimount Sys., Inc.*, No. C 06-3805 JSW, 2006 WL 2850054, at *3 (N.D. Cal. Oct. 5, 2006) ("As deference accorded to a [p]laintiff's choice of forum decreases[,] a defendant's burden to upset the plaintiff's choice of forum also decreases."); *Chrysler Capital Corp. v. Woehling*, 663 F. Supp. 478, 482 (D. Del. 1987) ("[W]hen the plaintiff chooses a forum which has no connection to the plaintiff himself or

1   the subject matter of the suit . . . the burden on the defendant is reduced and it is easier for the

2   defendant to show that the balance of convenience favors transfer.").

3       Mr. Ridenour does not reside in the Northern District of California and, aside from working

4   for a law firm that has its main office in San Francisco, has no connection to the district. Some

5   operative facts occurred here, but others occurred in Virginia. Mr. Ridenour communicated with

6   Orrick employees regarding the Plan, and the California DOI investigated matter in California, but

7   Mr. Ridenour and his family live in Virginia and B.R. was examined by doctors and receives

8   therapy in Virginia.

9       Given these facts, the court accords Mr. Ridenour's choice of forum some deference (but not

10  the strong deference it would accord a pension plan's choice of its home forum in an action to

11  collect unpaid contributions).

12      The convenience of the parties is a neutral factor. Mr. Ridenour's and Cigna's contacts with

13  the two forums are about equal. Mr. Ridenour communicated with Orrick employees regarding the

14  Plan, and the California DOI investigated the matter in California, but Mr. Ridenour and his

15  family live in Virginia, and B.R. was examined by doctors and receives therapy in Virginia. Cigna

16  reviewed the opinions by B.R.'s Virginian doctors and communicated with the DOI in California.

17  **3.    The Convenience of the Witnesses and the Ease of Access to Evidence**

18      Mr. Ridenour argues that this factor is largely irrelevant because in ERISA actions like this

19  one, the evidence often is limited to the administrative record, and testimony is not permitted. (*See*

20  Opposition, ECF No. 19 at 4, 14.) That may well be. In similar cases, though, courts in this district

21  have rejected the argument as premature and considered the convenience of witnesses. *Frias*, 2014

22  WL 5364105, at *4; *M.K.*, 2013 WL 2146609, at *4 (factor was neutral at best if not weighing in

23  favor of transfer); *but see Robertson v. Standard Ins. Co.*, No. 3:14-cv-01572-HZ, 2014 WL

24  7240682, at *3 (D. Or. Dec. 16, 2014) (stating that "considerations such as convenience of

25  witnesses are ease of access to evidence are minimal" in ERISA actions because district courts

26  generally review only the administrative record when considering whether the ERISA plan

27  administrator abused its discretion).

28      If witnesses were needed, some are in Virginia and some are in California. Mr. Ridenour, Ms.

ORDER (No. 3:15-cv-03051-LB)

United States District Court
Northern District of California

10

1    Ridenour, B.R., B.R's therapists and doctors (including Ms. Bruno and Dr. Weinstein), and one of

2    Cigna's doctors (Dr. Brown) are in Virginia. (*See* Motion, ECF No. 13 at 12-13.) Others are

3    located in California. The doctors who conducted the IMRs are located in California; so too is the

4    California DOI. (*See* Opposition, ECF No. 19 at 14; Sur-Reply, ECF No. 39 at 7-9.) Orrick is

5    headquartered in San Francisco, California, and the two Orrick employees involved with Mr.

6    Ridenour's claim work in Orrick's San Francisco office. (*See* Opposition, ECF No. 19 at 12-13;

7    Sur-Reply, ECF No. 39 at 7-8.)

8        In sum, witnesses are in both places. The court also thinks that it is relevant that discovery

9    likely will be limited in an ERISA case. The factor is neutral.

10       The ease of access to evidence also is a neutral factor. Generally the pertinent evidence will be

11   the claims file, and the court cannot discern inconvenience attached to its production that favors

12   one district over another. *See Frias*, 2014 WL 5364105, at *5.

13   **4.   Interests of Justice**

14       The court next considers public-interest factors such as relative degrees of court congestion,

15   local interest in deciding local controversies, potential conflicts of law, and burdening citizens of

16   an unrelated forum with jury duty. *See David*, 2007 WL 39400, at *5 (*citing Decker Coal*, 805

17   F.3d at 843). The last two do not apply here because this is an ERISA action which will be

18   decided under federal law, and it is a bench trial.

19       The court also does not think docket congestion figures into the equation. *See id.* Cigna's

20   statistics do not account for different kinds of cases, and in any event, the court can accommodate

21   the parties' dates. The factor is neutral.

22       As for local interests, there is Orrick (and the involvement of its employees) and the IMR

23   decisions (through the California DOI) overturning Cigna's denials here, and there is the Eastern

24   District's interest in deciding cases involving its residents. Under the particular facts of this case,

25   this factor tilts toward the California forum.

26       The last consideration is Cigna's lawsuit against Mr. Ridenour, his wife Laura Ridenour,

27   B.R.'s occupational therapist Beatrice Bruno, and Ms. Bruno's company, Big Island, Little Hands

28   LLC in the Eastern District of Virginia. *See Jolly v. Purdue Pharma L.P.*, No. 05-CV-1452H,

ORDER (No. 3:15-cv-03051-LB)

11

United States District Court
Northern District of California

1    2005 WL 2439197, at *2 (S.D. Cal. Sept. 28, 2005) ("The pendency of related actions in the

2    transferee forum is a significant factor in considering the interest of justice factor.") (citing *A.J.*

3    *Indus., Inc. v. United States Dist. Ct. for Cent. Dist. of Cal.*, 503 F.2d 384, 389 (9th Cir. 1974)). As

4    Cigna points out, its suit features claims arising under Virginia law, which the Virginia district

5    courts handle more routinely. It also notes that this court lacks jurisdiction over Ms. Ridenour, Ms.

6    Bruno, and Big Island, Little Hands LLC. This is important because, given the clear factual

7    overlap between the actions, the presence or absence of jurisdiction over these defendants is the

8    key to determining whether Cigna's claims are compulsory counterclaims that Cigna was required

9    to assert in this action or not. *See* Fed. R. Civ. P. 13(a)(1) ("A pleading must state as a

10   counterclaim any claim that—at the time of its service—the pleader has against an opposing party

11   if the claim: (A) arises out of the transaction or occurrence that is the subject matter of the

12   opposing party's claim; and (B) does not require adding another party over whom the court cannot

13   acquire jurisdiction."); *Cont'l Grain Co. v. The Barge FBL-585*, 364 U.S. 19, 26 (1960) ("To

14   permit a situation in which two cases involving precisely the same issues are simultaneously

15   pending in different District Courts leads to the wastefulness of time, energy and money that §

16   1404 (a) was designed to prevent.").

17        Mr. Ridenour argues that Cigna's claims are compulsory counterclaims; he does not address in

18   his pleadings the lack of personal jurisdiction over Ms. Ridenour and Ms. Bruno (and her business

19   Big Islands, Little Hands). He does assert in his sur-reply that "Ms. Bruno is a sham defendant."

20   (ECF No. 39 at 4 n.3.) The court discussed the issue with the parties at the hearing; it seems an

21   odd choice to include Ms. Bruno (even though the court appreciates that the disagreement about

22   benefits boils down to whether up to 35 hours of occupational therapy per week are appropriate

23   and whether Ms. Bruno is an appropriate therapist given her ties to the family). For now, the issue

24   is not raised sufficiently in this motion (especially as to Ms. Bruno) that the court can conclude

25   that Cigna's action in the Eastern District weighs in favor of transfer because it cannot bring its

26   claims against her (and perhaps Ms. Bruno) here.

27                                    *        *        *

28        In sum, the court gives some deference to the plaintiff's choice of forum, there is a local

interest, and the other factors are neutral. Cigna thus has not made a "strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum." *See Decker Coal*, 805 F.2d at 843.

## CONCLUSION

The court denies Cigna's motion. This disposes of ECF No. 13.

**IT IS SO ORDERED.**

Dated: November 2, 2015

_____

LAUREL BEELER
United States Magistrate Judge

ORDER (No. 3:15-cv-03051-LB)

13